Argued and submitted September 29, reversed in part and remanded for new trial; otherwise affirmed December 8, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# RODNEY STEVEN MITUNIEWICZ,
*Appellant.*

## (C91-08-58CR; CA A75799)
864 P2d 1359

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Durham, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant was convicted of possession of a controlled substance, ORS 475.992, and three other felonies. He appeals only his conviction for possession, contending that the trial court erred in denying his motion to suppress evidence. We reverse.

Officer Wayt stopped defendant for speeding on Interstate 5. Wayt smelled a moderate odor of alcohol when defendant rolled down his window. Wayt administered field sobriety tests, but the results were inconclusive. Defendant stayed in his car while Wayt ran a records check. Officer Groth, who was providing backup, saw defendant retrieve a paper bag from the back seat of the car and make other suspicious movements. He looked in the passenger window and saw defendant stuff several bundles of currency into his pants.

Groth had concerns that defendant might be carrying a weapon because of the large amount of cash that he had. Both officers approached defendant and asked him to step out of the car. Groth asked defendant for consent to pat him down. Defendant agreed, and then said that he had $23,000 concealed in his underwear. After all of the money was recovered from his person, a police dispatcher told Wayt that defendant was wanted for "felony driving while revoked." Wayt immediately arrested defendant, handcuffed him and began a second search of defendant's person. Wayt testified that, after arresting a person, it was standard procedure, partly for safety and partly as a matter of booking policy, to remove all items from the arrestee's pockets. The items are then placed in a bag or sack before transporting the arrestee. One item Wayt removed was a partially folded piece of yellow paper. He said that it was not folded like a bindle,[1] and that he did not know whether anything was inside until he opened the paper and found a plastic bag containing a small quantity of tar heroin.

Wayt took defendant to the police station where, after being given his *Miranda* warnings, defendant admitted that the heroin was his and that he had "shot up" earlier that

---

[1] A paper bindle is a container often used to carry contraband.

evening. Wayt had the car, which belonged to another person, towed to the police station. He contacted the owner of the car, who gave his written consent to search it. In the course of that search, Wayt found a bag with syringes and a spoon under the driver's seat.

Defendant moved to suppress all evidence seized during and derived from the second search, arguing that the officers lacked probable cause to believe that a crime had been committed or that contraband would be found. The trial court denied the motion, finding that the heroin was discovered during a lawful search incident to arrest or as part of a valid inventory. It also concluded that the heroin would have inevitably been discovered during the booking procedure at the jail. Finally, the court found that the currency, syringe and spoon were "the fruit of lawful and voluntary consent searches."[2]

■ Defendant assigns error to the court's denial of his motion to suppress. Although we are bound by the trial court's findings of historical fact, *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), we must determine if those facts are sufficient to satisfy constitutional standards. *State v. Warner*, 284 Or 147, 158, 585 P2d 681 (1978).

■ Defendant first contends that the heroin was seized during an unlawful search incident to arrest. A search incident to arrest must be reasonable in light of all the facts. *State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982). The purpose of the search must be to protect the arresting officer, to obtain relevant evidence of the crime prompting the arrest or to prevent destruction of evidence. 293 Or at 759; *State v. Baker*, 100 Or App 31, 33, 784 P2d 446 (1989). The state argues that those criteria are satisfied in this case. We disagree.

■ The evidence shows that the officers had some concerns about their safety when they conducted the first search. However, at the time of the second search, defendant was handcuffed and cooperative. There is no evidence in the record that Wayt had any concerns about his safety, or that he suspected that the yellow paper might contain a weapon. The

---

[2] Defendant does not argue that the currency, syringe and spoon should have been suppressed.

evidence shows that the seizure and opening of that paper was not for the purpose of protecting the arresting officer.

The state next argues that, because defendant showed signs of intoxication, it was reasonable for Wayt to seize and search the paper to determine whether an intoxicating substance was concealed inside. Defendant was arrested for felony driving while revoked. Wayt administered field sobriety tests because he smelled a moderate odor of alcohol when he stopped defendant. The results of those tests were inconclusive, and Wayt allowed defendant to remain in his car. Neither officer testified that he suspected defendant was under the influence of any other intoxicant. Because the seizure of the paper cannot be supported under *Caraher*, the discovery of heroin inside the paper was not justified as part of a search incident to arrest.

■ Defendant next asserts that the search and seizure of the paper cannot be justified as a valid inventory. For an inventory to be valid, the state must show by a preponderance of the evidence that it was conducted pursuant to a properly authorized administrative program, designed and systematically administered so that it involves no exercise of discretion by the officer taking the inventory. *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984). The purpose of this requirement is to ensure the protection of the defendant's property, to eliminate false claims and to protect against injury. 298 Or at 7.

■ Wayt testified that it was standard procedure, partly for the safety of the officers and partly because of departmental policy, to remove everything from the arrestee's person and put it in a bag before placing the arrestee in the patrol car. He also said that "it was our policy that everything is removed off [*sic*] their person when they are in the transport situation." There was no other evidence regarding inventory procedures. Assuming, without deciding, that there was a properly authorized administrative program, systematically administered so that the inventory involved no exercise of law enforcement discretion, there is no evidence that the inventory policy required the opening of any containers, including the piece of yellow paper.

■ The state contends that, even if both the search incident to arrest and the inventory were invalid, the heroin

would have been inevitably discovered during defendant's booking. The inevitable discovery doctrine is an exception to the rule that unlawfully obtained evidence must be suppressed. ORS 133.683 codifies the doctrine.[3] It generally requires that the state show by a preponderance of the evidence that predictable and proper investigatory procedures would have been used and that those procedures would have resulted in the lawful discovery of the derivative evidence. *State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986).[4]

■ We do not doubt that defendant's personal effects would have been identified, examined and secured by jail personnel. However, even assuming a properly authorized administrative program, designed and systematically administered so that it involves no exercise of discretion by the officer taking the inventory, *State v. Atkinson, supra*, 298 Or at 7, the state presented no evidence that the booking inventory would have inevitably included inspection of the contents of the paper. Therefore, we cannot conclude that the heroin would have inevitably been discovered and seized at the police station.

The state advances no other theories justifying the seizure of the heroin. We conclude that the trial court erred in denying the motion to suppress. The heroin was illegally seized and defendant's later statements about his use and possession of it were tainted by that illegality. *State v. Miller, supra*, 300 Or at 226.

Conviction for possession of a controlled substance reversed and remanded for a new trial; otherwise affirmed.

---

[3] ORS 133.683 provides:

"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

[4] The state argues that the trial court did not need specific testimony concerning the extent to which defendant's effects would have been examined at the police station. The state gives no authority for that proposition, and we find none.